Justice Souter,
with whom Justice Stevens, Justice Ginsburg, and Justice Breyer join, dissenting.
Flast v. Cohen, 392 U. S. 83, 102 (1968), held that plaintiffs with an Establishment Clause claim could “demonstrate the necessary stake as taxpayers in the outcome of the litigation to satisfy Article III requirements.” Here, the controlling, plurality opinion declares that Flast does not apply, but a search of that opinion for a suggestion that these taxpayers have any less stake in the outcome than the taxpayers in Flast will come up empty: the plurality makes no such finding, nor could it. Instead, the controlling opinion closes the door on these taxpayers because the Executive Branch, and not the Legislative Branch, caused their injury. I see no basis for this distinction in either logic or precedent, and respectfully dissent.
*638 I
We held in Flast, and repeated just last Term, that the “ ‘injury5 alleged in Establishment Clause challenges to federal spending55 is “the very ‘extraction] and spenfding]5 of ‘tax money5 in aid of religion.55 DaimlerChrysler Corp. v. Cuno, 547 U. S. 332, 348 (2006) (quoting Flast, supra, at 106; alterations in original). As the Court said in Flast, the importance of that type of injury has deep historical roots going back to the ideal of religious liberty in James Madison’s Memorial and Remonstrance Against Religious Assessments, that the government in a free society may not “force a citizen to contribute three pence only of his property for the support of any one establishment55 of religion. 2 Writings of James Madison 183, 186 (G. Hunt ed. 1901) (hereinafter Madison), quoted in Flast, supra, at 103. Madison thus translated into practical terms the right of conscience described when he wrote that “[t]he Religion ... of every man must be left to the conviction and conscience of every man; and it is the right of every man to exercise it as these may dictate.55 Madison 184; see also Zelman v. Simmons-Harris, 536 U. S. 639, 711, n. 22 (2002) (SOUTER, J., dissenting) (“As a historical matter, the protection of liberty of conscience may well have been the central objective served by the Establishment Clause55); Locke v. Davey, 540 U. S. 712, 722 (2004) (“Since the founding of our country, there have been popular uprisings against procuring taxpayer funds to support church leaders, which was one of the hallmarks of an ‘established5 religion55); N. Feldman, Divided By God: America’s Church-State Problem — And What We Should Do About It 48 (2005) (“The advocates of a constitutional ban on establishment were concerned about paying taxes to support religious purposes that their consciences told them not to support55).
The right of conscience and the expenditure of an identifiable three pence raised by taxes for the support of a religious cause are therefore not to be split off from one another. *639 The three pence implicates the conscience, and the injury from Government expenditures on religion is not accurately classified with the “Psychic Injury” that results whenever a congressional appropriation or executive expenditure raises hackles of disagreement with the policy supported, see ante, at 624-625 (Scalia, J., concurring in judgment). Justice Stewart recognized this in his concurring opinion in Flast, when he said that “every taxpayer can claim a personal constitutional right not to be taxed for the support of a religious institution,” and thus distinguished the case from one in which a taxpayer sought only to air a generalized grievance in federal court. 392 U. S., at 114.
Here, there is no dispute that taxpayer money in identifiable amounts is funding conferences, and these are alleged to have the purpose of promoting religion. Cf. Doremus v. Board of Ed. of Hawthorne, 342 U. S. 429, 434 (1952). The taxpayers therefore seek not to “extend” Flast, ante, at 615 (plurality opinion), but merely to apply it. When executive agencies spend identifiable sums of tax money for religious purposes, no less than when Congress authorizes the same thing, taxpayers suffer injury. And once we recognize the injury as sufficient for Article III, there can be no serious question about the other elements of the standing enquiry: the injury is indisputably “traceable” to the spending, and “likely to be redressed by” an injunction prohibiting it. Allen v. Wright, 468 U. S. 737, 751 (1984); see also Cuno, supra, at 348 (“[A]n injunction against the spending would of course redress that injury”).
The plurality points to the separation of powers to explain its distinction between legislative and executive spending decisions, see ante, at 611-612, but there is no difference on that point of view between a Judicial Branch review of an executive decision and a judicial evaluation of a congressional one. We owe respect to each of the other branches, no more to the former than to the latter, and no one has suggested that the Establishment Clause lacks applicability *640 to executive uses of money. It would surely violate the Establishment Clause for the Department of Health and Human Services to draw on a general appropriation to build a chapel for weekly church services (no less than if a statute required it), and for good reason: if the Executive could accomplish through the exercise of discretion exactly what Congress cannot do through legislation, Establishment Clause protection would melt away.[1]
So in Bowen v. Kendrick, 487 U. S. 589 (1988), we recognized the equivalence between a challenge to a congressional spending bill and a claim that the Executive Branch was spending an appropriation, each in violation of the Establishment Clause. We held that the “claim that... funds [were] being used improperly by individual grantees [was no] less a challenge to congressional taxing and spending power simply because the funding authorized by Congress has flowed through and been administered by the Secretary,” and we added that “we have not questioned the standing of taxpayer plaintiffs to raise Establishment Clause challenges, even when their claims raised questions about the administratively made grants.” Id., at 619.
The plurality points out that the statute in Bowen “expressly authorized and appropriated specific funds for grant-making” and “expressly contemplated that some of those moneys might go to projects involving religious groups.” *641 Ante, at 607. That is all true, but there is no reason to think it should matter, and every indication in Bowen that it did not. In Bowen we already had found the statute valid on its face before we turned to the taxpayers’ as-applied challenge, see 487 U. S., at 618, so the case cannot be read to hold that taxpayers have standing only to claim that congressional action, but not its implementation, violates the Establishment Clause. Thus, after Bowen, the plurality’s distinction between a “congressional mandate” on the one hand and “executive discretion” on the other, ante, at 609, is at once arbitrary and hard to manage: if the statute itself is constitutional, all complaints must be about the exercise of “executive discretion,” so there is no line to be drawn between Bowen and the case before us today.[2]
II
While Flast standing to assert the right of conscience is in a class by itself, it would be a mistake to think that case is unique in recognizing standing in a plaintiff without injury to flesh or purse. Cognizable harm takes account of the nature of the interest protected, which is the reason that “the constitutional component of standing doctrine incorporates concepts concededly not susceptible of precise definition,” *642 leaving it impossible “to make application of the constitutional standing requirement a mechanical exercise.” Allen, 468 U. S., at 751. The question, ultimately, has to be whether the injury alleged is “too abstract, or otherwise not appropriate, to be considered judicially cognizable.” Id., at 752.[3] *3
In the case of economic or physical harms, of course, the “injury in fact” question is straightforward. But once one strays from these obvious cases, the enquiry can turn subtle. Are esthetic harms sufficient for Article III standing? What about being forced to compete on an uneven playing field based on race (without showing that an economic loss resulted), or living in a racially gerrymandered electoral district? These injuries are no more concrete than seeing one’s tax dollars spent on religion, but we have recognized each one as enough for standing. See Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U. S. 167, 183 (2000) (esthetic injury); Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville, 508 U. S. 656, 666 (1993) (“[T]he ‘injury in fact’ is the inability to compete on an equal footing in the bidding process, not the loss of a contract”); United States v. Hays, 515 U. S. 737, 744-745 (1995) (living in a racially gerrymandered electoral district). This is not to say that any sort of alleged injury will satisfy Article III, but only that intangible harms must be evaluated case by case.[4]
*643 Thus, Flast speaks for this Court’s recognition (shared by a majority of the Court today) that when the Government spends money for religious purposes a taxpayer’s injury is serious and concrete enough to be “judicially cognizable,” Allen, supra, at 752. The judgment of sufficient injury takes account of the Madisonian relationship of tax money and conscience, but it equally reflects the Founders’ pragmatic “conviction that individual religious liberty could be achieved best under a government which was stripped of all power to tax, to support, or otherwise to assist any or all religions,” Everson v. Board of Ed. of Ewing, 330 U. S. 1, 11 (1947), and the realization continuing to the modern day that favoritism for religion “ ‘sends the ... message to ... nonadherents “that they are outsiders, not full members of the political community,”’” McCreary County v. American Civil Liberties Union of Ky., 545 U. S. 844, 860 (2005) (quoting Santa Fe Independent School Dist. v. Doe, 530 U. S. 290, 309-310 (2000), in turn quoting Lynch v. Donnelly, 465 U. S. 668, 688 (1984) (O’Connor, J., concurring); omissions in original).[5]
Because the taxpayers in this ease have alleged the type of injury this Court has seen as sufficient for standing, I would affirm.

 The plurality warns that a parade of horribles would result if there were standing to challenge executive action, because all federal activities are “ultimately funded by some congressional appropriation.” Ante, at 610. But even if there is Article III standing in all of the cases posited by the plurality (and the Court of Appeals thought that at least sometimes there is not, Freedom From Religion Foundation, Inc. v. Chao, 433 F. 3d 989, 996 (CA7 2006)), that does not mean taxpayers will prevail in such suits. If these claims are frivolous on the merits, I fail to see the harm in dismissing them for failure to state a claim instead of for lack of jurisdiction. To the degree the claims are meritorious, fear that there will be many of them does not provide a compelling reason, much less a reason grounded in Article III, to keep them from being heard.

 Bowen also indicated that the barrier to standing in Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U. S. 464 (1982), was that the taxpayers challenged “an exercise of executive authority pursuant to the Property Clause of Article IV, §3.” 487 U. S., at 619. In Valley Forge, we had first discussed the executive rather than legislative nature of the action at issue there and then, “perhaps redundantly,” 454 U. S., at 480, pointed to the distinction between the Property Clause and the Taxing and Spending Clause. Although at the time Valley Forge might have been taken to support the distinction the plurality draws today, Bowen said that Valley Forge rested on the distinction between the Property Clause on the one hand and the Taxing and Spending Clause on the other. See also Valley Forge, supra, at 480, n. 17 (noting that the transfer of property to a religious college involved no expenditure of funds).

 Although the plurality makes much of the fact that the injury in this case is "generalized,” ante, at 599, and shared with the "public at large,” ante, at 600, those properties on their own do not strip a would-be plaintiff of standing. See Federal Election Comm’n v. Akins, 524 U. S. 11, 24 (1998) ("Often the fact that an interest is abstract and the fact that it is widely shared go hand in hand. But their association is not invariable, and where a harm is concrete, though widely shared, the Court has found ‘injury in fact’”).

 Outside the Establishment Clause context, as the plurality points out, we have not found the injury to a taxpayer when funds are improperly expended to suffice for standing. See ante, at 609-610 (citing examples).

 There will not always be competitors for the funds who would make better plaintiffs (and indeed there appears to be no such competitor here), so after accepting the importance of the injury there is no reason to refuse standing as a prudential matter.